**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| WILLIAM L. CENTERS,         )<br>                                                  )<br>                    Plaintiff.        )<br>                                                  )<br>     vs.                                     )          Case No. 06 C 3782<br>                                                  )<br>ARMCO, LLC,                           )<br>                                                  )<br>                    Defendant.    )| |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

William Centers has filed a one count complaint against Armco, LLC, alleging that Armco is in default on a promissory note in which it promised to pay him, on demand, $400,019, plus interest. Centers has moved for summary judgment.

As an initial matter, while finalizing this ruling, the Court realized that the facts establishing federal subject matter jurisdiction had not yet been fully set forth in the parties' pleadings. Though both sides agreed that the Court has diversity jurisdiction, *see* Compl. ¶3; Answer ¶3, neither the complaint nor the answer fully described Armco's citizenship. To establish the Court's jurisdiction, more is required than simply a statement that Armco "is an Illinois limited liability corporation." Compl. ¶ 2. For purposes of diversity jurisdiction, a "limited liability company" is a citizen of every state of which any of its members is a citizen. *See Mutual Assignment & Indemnification Co. v. Lind-Waldock & Co., LLC,* 364 F.3d 858, 861 (7th Cir. 2004); *Cosgrove v. Bartolotta,* 150 F.3d 729, 731 (7th Cir. 1998).

When the Court discovered this defect, it arranged a conference call with both sides' counsel, advised them of the problem, and directed the filing of a complete description of Armco's citizenship as of the date Centers filed suit. On April 17, 2007, Armco filed a statement that its members as of the date the suit was filed were both Illinois citizens, making Armco itself an Illinois citizen. Because the complaint identifies Centers as a citizen of Michigan, complete diversity of citizenship existed when the case was filed, and as a result the Court has jurisdiction of the case.

For the reasons stated below, the Court denies Centers' motion for summary judgment.

**Facts**

Because Centers has moved for summary judgment, the Court views the facts in the light most favorable to Armco and draws reasonable inferences in its favor. *See*, *e.g.*, *Carreon v. Ill. Dep't of Human Services.,* 395 F.3d 786, 790 (7th Cir. 2005).

Centers was an investor in and a lender to Armco. A letter of intent dated March 14, 2006, the terms of which the Court will discuss shortly, recited the history of their relationship:

- St. Andrews Circle, LLC ("SAC"), an entity controlled by Centers, made an equity contribution of $781,822 to Armco in return for a 50% share of the company.

- In January 2001, SAC loaned $918,178 to Armco.

- In January 2001, Centers loaned $800,000 to Armco's manager Greg Ponte; the loan proceeds were used by or for Armco.

- In 2004, Wells Fargo Bank loaned $5,000,000 to Greg Ponte and SAC; the proceeds of this loan were used by or for Armco. Centers personally guaranteed the loan.

- In November 2005, Centers loaned $400,038 to Armco. Of this, $186,507 was later repaid.

- In December 2005, Centers loaned $400,019 to Armco.

The December 2005 loan is the one directly at issue in Centers' complaint in this case. In return for that loan, Armco executed a promissory note in which it promised to pay Centers $400,019 plus interest upon written demand. The Note stated that "Centers' acceptance of late or partial payments, excuse of any default, or delay in enforcement of any right, shall not establish a custom or course of conduct as to any waiver of Centers' rights and remedies." *Id*.

In early 2006, Centers told Armco that he no longer wished to be involved with Armco. In March 2006, Centers and SAC entered into a letter of intent ("LOI") with Armco and Rental Management Co., Inc., Armco's other member, to effectuate a buyout of Centers and SAC. *See* Def. Ex. 1. The LOI stated that it superseded "all prior oral or written agreements or understandings of the parties concerning the subject matter hereof." *Id.,* § 3 ¶ 2.

The LOI recited that Aaron Rents, Inc. had expressed an interest in purchasing Armco's Indiana rental locations and had tendered a draft purchase agreement providing for payment on April 19, 2006. *Id.,* § 1 ¶ 10. The LOI also recited that Ponte, Rental Management Co.'s president, had advised Centers that a man named Kipp Schrage was interested in purchasing a share in or making a loan to Armco and that this transaction likewise was expected to close on April 19, 2006. *Id.,* § 1 ¶ 11.

The LOI further stated that its purpose was

> to document the agreement that has been reached among Armco, SAC, [Ponte] and [Centers] concerning the buy-out of SAC/[Centers] from Armco at a break even amount which would entail: (i) the payment, in full, of the SAC/[Centers] Investment, and (ii) the payoff of the full amount of the Wells Fargo Indiana Loan

3

and the complete release of SAC as a co-maker of the Wells Fargo Indiana Loan, and the complete release of [Centers] as a guarantor of the Wells Fargo Indiana Loan.

*Id.,* § 2 ¶ 1. The terms of the buyout, as stated in the LOI, were as follows:

- The $400,038 loan from Centers would be paid in full, including accrued interest, if Wells Fargo agreed in writing to defer Armco's March 15, 2006 principal payment on the Wells Fargo loan.

- If, by April 19, 2006, Aaron Rents purchased Armco's Indiana locations and Kipp made his proposed investment, the following would occur:

- SAC would relinquish its 50% interest in Armco in return for payment of the $781,822 equity contribution, the $918,178 loan with accrued interest, and the $800,000 loan with accrued interest;

- the proceeds of the sale to Aaron Rents would be used to pay off the Wells Fargo loan, and SAC and Centers would be released from any obligation on the loan; and

- "[t]o the extent Armco has available cash flow," it would use this first to pay accrued interest on the $400,038 loan if it remained outstanding, then to pay accrued interest on the $400,019 loan, then to pay the principal on the $400,038 loan if it remained outstanding, and then to pay the principal on the $400,019 loan.

*Id.,* § 2 ¶¶ 2 & 3. The LOI stated that it would "terminate and be of no force or effect" if any of these transactions failed to occur on or before the specified dates. *Id.,* § 3 ¶ 1.

It is undisputed that only one of the transactions contemplated by the LOI took place by April 19, 2006 as scheduled: Centers was released as a guarantor of the Wells Fargo loan. None of the other transactions took place by April 19. In other words, Aaron Rents did not complete

4

the purchase of Armco's Indiana locations by April 19, and Kipp did not make his contemplated investment by that date. As a result, the remaining portions of the buyout of SAC and Centers did not take place on April 19. On May 1, 2006, however, Centers' lawyer made a written inquiry to Armco about when the funding date on the LOI would occur. In addition, on May 4, Centers' lawyer sent Armco an e-mail including updated payoff amounts through May 5.

The buyout closed on May 10, 2006, about three weeks late, without objection by Centers. Based on the materials submitted to the Court, it appears that SAC's $781,822 equity contribution, $918,178 loan, and $800,000 loan were all repaid at that time. The $400,038 loan and the $400,019 loan, however, were not repaid. But as noted earlier, the LOI specifically provided that Armco would pay off these loans "[t]o the extent [it] has available cash flow." Def. Ex. 1, § 2 ¶ 3(iii). It is undisputed, at least for purposes of the present motion, that Armco lacked the cash flow to pay off those loans at that time. On May 11, 2006, however, Centers demanded payment of the $400,109 note in full.

Armco did not pay off the $400,019 note prior to Centers' filing of this suit. It is undisputed that on July 7, 2006, just before Centers filed suit, Armco paid Centers $170,000. At the time suit was filed, over $253,000 (including accrued interest) remained due and owing. On November 22, 2006, about four months after Centers filed suit, Armco made an additional $75,000 payment.

## Discussion

When a district court rules on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Entry of summary judgment is

5

appropriate only when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Centers argues that Michigan law applies in this case because the promissory note states that it "shall be interpreted, construed and governed by the laws of the State of Michigan." Compl., Ex. A. The relevant issue, however, concerns the construction of the LOI, not the note. The LOI does not specify which state's law applies.

"A federal court sitting in diversity looks to the conflict-of-laws rules in the state jurisdiction in which it sits in order to choose the substantive law applicable to the case." *GATX Leasing Corp. v. National Union Fire Ins. Co.,* 64 F.3d 1112, 1114 (7th Cir. 1995). Illinois law applies the "most significant contacts" test to determine which state's law applies in a particular case. *Id*. at 1115. The relevant contacts include the places of contracting, negotiation, performance, location of the subject matter of the contract, and the domicile, residence, places of incorporation, and places of business of the parties. *Id*. The LOI was executed in Illinois; the activities to consummate the LOI occurred in Illinois; and Armco is located in Illinois. The only contact with Michigan appears to be that it is Centers' place of residence. That is insufficient to make it the state with the "most significant contacts." For these reasons, the Court concludes that Illinois law governs the matters at issue on the motion for summary judgment.

It is undisputed that Armco has failed to pay the $400,019 note in full. The LOI modified the obligations of the note, however, by providing that Armco would pay off the note only when and to the extent it had available cash flow. As noted earlier, the LOI stated that it superseded prior agreements on the same subject matter, a category that includes the $400,019 note.

6

Centers argues that even if the LOI modified the note's obligations, the LOI's conditions were not fulfilled in timely fashion, and as a result the LOI was, by its own terms, of no force or effect. In response, Armco argues that Centers waived fulfillment of those conditions, or is estopped from insisting on them, because he acted as though the LOI was still in effect even after certain of the contemplated transactions did not occur on time, and continued to accept the other benefits of the LOI.

There is evidence from which a fact finder reasonably could find that Centers continued to treat the LOI as still in effect, and accepted its benefits, despite the untimely fulfillment of its conditions. Specifically, there is evidence that Centers proceeded ahead to close the deal set forth in the LOI even though neither the Aaron Rents purchase nor the Kipp investment took place by April 19, 2006. Almost two weeks after April 19, Centers' lawyer inquired when the funding of the LOI would take place, and a few days later he sent updated payoff amounts to Armco. As noted earlier, the buyout closed on May 10, 2006, about three weeks late, without objection by Centers. Based on the materials submitted, it appears that SAC's $781,822 equity contribution and $918,178 loan, and Centers' $800,000 loan was repaid at that time.

A reasonable inference could be drawn from these events that Centers was willing to overlook the untimely fulfillment of the LOI's conditions because he wanted to get the benefits of the LOI: payouts on the $781,822 equity contribution and the two January 2001 loans totaling $1,718,178, and release of his obligation as a guarantor of the Wells Fargo loan. Centers would not have gotten these benefits absent conclusion of the deal memorialized in the LOI. A reasonable fact finder could find that Centers went ahead with the deal despite the late fulfillment of its conditions and despite awareness – based on the LOI's "available cash flow"

7

term –

that Armco might not have the available cash to pay out the two $400,000 loans. A reasonable fact finder could also find that by demanding immediate payment of the $400,109 note, Centers was essentially ignoring one of the terms of the LOI because he no longer considered it favorable, even after he had accepted the benefit of the LOI's other, favorable terms.

"The principles of waiver and estoppel support the notion that a party to a contract may not lull another into a false assurance that strict compliance with a contractual duty will not be required and then sue for noncompliance." *Saverslak v. Davis-Cleaver Produce Co.*, 606 F.2d 208, 213 (7th Cir. 1979). As opposed to waiver, which focuses on the intent of the non-breaching party, estoppel focuses on the effects of his conduct on the breaching party. *Id*. "An estoppel arises when a party's conduct misleads another to believe that a right will not be enforced and causes him to act to his detriment in reliance upon this belief." *Id*. Thus, a non-breaching party may be estopped from enforcing a known right even if he has not waived that right. *Id*.

In this case, a reasonable fact finder could determine that Centers' conduct caused Armco to believe that strict compliance with the LOI's deadlines was not necessary. Based upon that determination, Centers could be deemed to be estopped from arguing that the LOI was of no effect due to the untimely fulfillment of its conditions. Were such a conclusion reached, Centers would be stuck with the LOI's provision that Armco was to pay off the $400,019 note "to the extent [it] has available cash flow." Because he has made no attempt to show that Armco actually had the available cash flow to pay the note in full, Centers is not entitled to summary judgment.

8

**Conclusion**

For the reasons stated above, the Court denies plaintiff's motion for summary judgment [docket no. 14]. The case is set for a status hearing on April 25, 2007 at 9:30 a.m. for the purpose of setting a trial date.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 18, 2007